## WALHOEFER BROTHERS V. HOBGOOD, BROWN & CO.

Decided February 23, 1898.

**1. Plea of Privilege—Defendants in Different Counties.**

Defendants were properly sued outside the county of their residence when joined with a codefendant residing in the county where suit was brought in an action charging them with jointly converting property mortgaged to plaintiffs.

**2. Amount in Controversy—Plea to Jurisdiction.**

The amount which will give the court jurisdiction is determined by the claim made in the petition, though less is recovered, in the absence of a plea that the claim was falsely exaggerated in order to confer jurisdiction.

**3. Court and Jury—Peremptory Charge.**

A peremptory charge on the subject of waiver of lien was properly refused where the evidence of waiver was not conclusive.

**4. Waiver—Willingness Not Consent.**

A charge that mortgagees waived their lien if "willing" for the mortgagor to sell the property, was properly refused; the willingness must have been coupled with consent, proved by words or conduct, etc.

**5. Mortgage—Release of Part of Property—Lien as to Remainder.**

Consent of mortgagees to a sale of part of a mortgaged crop for the purpose of discharging the landlord's lien for rent did not waive their lien for the entire debt upon other portions of the crop to which it applied.

**6. Mortgage—Waiver—Sale.**

Consent by the landlord and by mortgagees of the tenant's crop that the latter should sell a part of it to pay rent was a waiver of the landlord's lien to extent of the value of the part sold, but did not affect the lien of the mortgagees for the full amount of their debt upon the part remaining unsold.

**7. Landlord's Lien—Mortgaged Crop—Waiver—Sale.**

Cotton subject to both a landlord's and a mortgage lien was sold with consent of the landlord for the purpose of paying rent, the money received being destroyed by fire while in the hands of the tenant. A distress warrant having been then levied on the cotton in the hands of the purchaser, the landlord waived a part of his claim for rent and transferred his reduced claim to the purchaser of the cotton in a settlement of the proceeding by distraint. In a subsequent suit by the mortgagee against the assignee of the landlord's lien, for conversion of the mortgaged crop, including the cotton so sold, it was held that such lien of the landlord's assignee could be enforced only for the amount not waived by the landlord, and the reduced claim should be further credited with the value of the cotton so sold by the tenant to such assignee, and only the balance remaining took precedence over the lien of the mortgagee on the rest of the crop.

APPEAL from Hays. Tried below before Hon. ED. R. KONE.

*F. J. Maier* and *Cook & McBride,* for appellants.

*Brown & Pritchell,* for appellees.

COLLARD, ASSOCIATE JUSTICE.—This is a suit brought in Hays County by appellees, Hobgood, Brown & Co., against appellants, Walhoefer Bros., a firm of merchants composed of August and Robert Walhoefer, both alleged to reside in Comal County, and against Henry Harvey, for damages for alleged conversion of certain cotton, upon which plaintiffs had a lien by two mortgages, given to secure two promissory notes.

The petition shows that on the 10th day of January, 1894, C. P. Hobgood and J. R. Brown were partners, firm name Hobgood & Brown, on which date Henry Harvey executed to them his promissory note, to wit:

"$84.42.          SAN MARCOS, TEXAS, January 10, 1894.

"September 1st after date, for value received, I promise to pay to the order of Hobgood & Brown eighty-four 42-100 dollars, with exchange, at San Marcos, Texas, with 10 per cent interest per annum from date until paid; and in the event default is made in payment of the note at maturity, and it is placed in the hands of an attorney for collection or suit is brought on the same, then an additional amount of 10 per cent on the principal and interest of this note shall be added to same as collection fees.          HENRY HARVEY."

The usual averments are made showing the liability of Harvey on the note, which was indorsed to Hobgood, Brown & Co. It is further shown that at the same time Harvey executed to the same payees a chattel mortgage, to secure the note, on all the crop of cotton and corn produced during the year 1894 on the farm of one Nalle, situated in Hays County, and described as "Joe Nalle farm, situated in Hays County, about eight

miles in a south direction from San Marcos, Texas;" in which mortgage Harvey expressly authorized Hobgood & Brown, in the event the note should not be paid when due, to take possession of the crops and sell the same and apply the proceeds to the payment of the note and costs of collection, and the balance, if any, to be paid to Harvey. The petition shows that the foregoing claim was indorsed and transferred to plaintiffs.

The petition also shows that on the 31st day of January, 1894, Harvey made, executed, and delivered to plaintiffs another note for $150, due September 1, 1894, bearing 10 per cent interest per annum, and 10 per cent attorney's fees, which note was secured by a like mortgage upon all his interest in the crops raised on the Nalle farm in the year 1894, describing the farm as "the Joseph Nalle farm, situated in Hays County, about six miles in a west direction from San Marcos;" which mortgage also authorized plaintiffs to take possession of said crops in case the note was not paid at maturity, and to sell the same, and apply the proceeds to the payment of the debts secured, and costs, etc. It is also alleged that the farm described in both mortgages was the same farm, and mortgaged Harvey's interest in all the crops of corn and cotton raised on said farm, which was in fact situated in Hays County, about seven miles from and in a southwesterly direction from the town of San Marcos, in said county. It is also alleged that the mortgages were both filed, deposited, and duly registered in Hays County, as required by law in case of chattel mortgages, at the time of their respective dates; that Harvey owned certain interests in the crops of corn and cotton raised on the farm in the year 1894, subject to plaintiffs' lien, which the defendants took and converted to their own use, to plaintiffs' damage $500. Prayer for judgment against all the defendants jointly and severally for their damages in a sum equivalent to the amount found to be due on the notes, principal, interest, and attorney's fees.

The defendants, Walhoefer Bros., being residents of Comal County, filed a sworn plea in abatement, claiming their privilege to be sued in Comal County, and a misjoinder of parties defendant. Also asked that Sleyden, Clarkson & Robards be made parties defendant, upon the ground that they had received cotton of Harvey subject to plaintiffs' mortgages; all of which pleas were by the court overruled.

Defendants Walhoefer Bros. also answered by general denial, and that they were bona fide innocent purchasers of the cotton from Harvey for a valuable consideration after it was baled, and affirmed that the cotton was not described in the mortgages of plaintiffs; that Harvey had authority from plaintiffs to sell them the cotton, and hence the mortgages were by plaintiffs waived. They also show that there was a landlord's lien for rent for $575 on said crops; that Harvey, with plaintiffs' consent, sold the cotton to procure money to pay the rent, which money was burned when Harvey's house was destroyed by fire; that the landlord, Joseph Nalle, levied a distress warrant on the cotton in Walhoefer Bros.' possession; that the latter purchased Nalle's claim and landlord's lien in a compromise with Nalle, which is superior to plaintiffs' lien, and

that Walhoefer Bros. did not receive enough corn and cotton to satisfy their preference landlord's lien.

. Other pleadings need not be set out.

Plaintiffs read in evidence their two notes, the first note transferred to plaintiffs, and the chattel mortgages, which mortgages were deposited, filed, and registered, as required by law to secure lien for chattel mortgages in Hays County, where the Nalle farm of 200 acres was situated, 150 acres of which were in cultivation. There was but one Nalle farm in Hays County, situated about seven miles southwest of San Marcos, and was occupied and cultivated by Harvey in the year 1894, and was identified as the farm referred to in plaintiffs' mortgages. Harvey was Nalle's tenant on the farm four years, including the year 1894. There were 200 acres in the farm, but only about 150 acres in cultivation. Harvey himself cultivated forty or fifty acres of the land in cotton and ten acres in corn in the year 1894, and had sublet the residue to Mexicans for one-third of the cotton.

The testimony shows that, of the cotton raised on the farm in 1894, Walhoefer Bros. bought some from Harvey and some from the Mexican tenants. There were twelve bales bought by Walhoefer Bros. from Harvey, which were sold to them on the 10th of October, 1894, for $317, to pay rent to Nalle, who by contract had a lien on the crops for rent and advances amounting to $575. Harvey's house was destroyed by fire two days after he had received the $317 for the twelve bales sold to defendants, Walhoefer Bros., and the money was destroyed in the fire. Nalle, Harvey's landlord, then instituted distress warrant proceedings against Harvey to recover his rents, and the distress warrant was levied on the twelve bales of cotton bought by Walhoefer Bros. from Harvey, then in their cotton yard at Hunter, Comal County, and on the 20th of October, 1894, upon six other bales in the gin, three of which belonged to Harvey's subtenant, Castillo, and the other three bought by Walhoefer Bros. from Harvey's subtenants. These six bales were moved by the sheriff to the cotton yard of Walhoefer Bros. at Hunter. Walhoefer Bros. then went to Austin and compromised with Nalle, purchasing, October 22, 1894, the latter's claim for rent and advances for $425 paid, Nalle stipulating in his transfer, that the "concession of $150 is made for the benefit of Henry Harvey, and not more than the amount of $125 is to be collected from him, the said Harvey, on the within lease, after October 22, 1894." The sheriff was then instructed to release the eighteen bales of cotton held by him under the levy of the distress warrant in Walhoefer Bros.' cotton yard, and this was done, leaving the eighteen bales in the possession of Walhoefer Bros.

They then took possession of the farm, telling Harvey that they had bought the crop from Nalle. They did not take charge of the subtenant's cotton. They put in pickers, gathered Harvey's cotton, and paid for pickers to help the Mexicans, buying some of their cotton and paying for it. Walhoefer Bros. did not take Harvey's corn. Nalle paid them $50 for the corn for Harvey and they left it for him.

Under charge of the court the jury returned a verdict for plaintiffs against defendants for $216.33, for which amount judgment was rendered against all the defendants, and Walhoefer Bros. have appealed.

*Opinion.*—1. There was no error in overruling defendants Walhoefer Bros.' plea of privilege. Jurisdiction properly attached to defendant Harvey, who resided in Hays County, and the other defendants, residing in Comal County, being properly joined as defendants in the action, could not sever the suit, to be sued in the county of their residence.

2. The court below had jurisdiction of the amount sued for. The petition was not demurrable upon the ground that the amount sued for was not within the jurisdiction of the court, and if the averments of amount claimed were falsely stated to confer jurisdiction, such fact could only be made available by plea and proof of same. Carter v. Hubbard, 79 Texas, 359; Wanke v. Foit, 80 Texas, 591.

3. There was no error in refusing to give to the jury defendants' requested charge, to the effect that plaintiffs had, by their own testimony, shown that they had waived their lien on the twelve bales of cotton sold to Walhoefer Bros. before the fire.

There was testimony tending to show that both Nalle and plaintiffs had, by words, acts, and conduct, permitted Harvey to sell the cotton to raise money to pay the rent, but the testimony was not so conclusive and uncontradicted as to warrant a peremptory charge that the lien was waived.

In the same assignment of error appellants complain that the court erred in refusing the following special instruction requested by defendants: "If you believe from the evidence that any of the plaintiffs, Mr. Hobgood, Mr. Brown, or Mr. Cartwright, consented or were willing for Harvey to sell said cotton, the twelve bales, * * * in such case they can not recover from Walhoefer Bros. for any cotton which Harvey thus sold to Walhoefer Bros."

Though the charge asked may have contained some correct principles which were proper and applicable to the facts, yet it contained an erroneous proposition, which should not have been given, and the court did not err in refusing it as presented. If plaintiffs were "willing" for Harvey to have sold the cotton, that fact alone would not have given Harvey the right to sell and Walhoefer Bros. to purchase the cotton. The willingness to authorize the sale must have been coupled with their consent, which might be proved by words, conduct, etc.

The eleventh requested charge should not have been given. It was, that if plaintiffs or any one of them, in any way consented to Harvey's selling the cotton, or by words or actions gave Harvey to understand that he might sell it, then their mortgage lien is waived, and they can not recover of Walhoefer Bros. This charge was erroneous, because it made plaintiffs waive their lien even if they consented to the sale for the purpose of paying the rent. They may have consented to the sale to

pay the rent without waiving their lien altogether. They still might have recovered to the extent of their lien debt for the conversion of other cotton and corn to which their lien applied.

The twelfth requested charge was upon the weight of evidence and should not have been given.

The thirteenth requested charge should not have been given. It would have told the jury that if plaintiffs consented to the sale of the cotton to pay the rent, they waived their lien, whether the money was applied to the lien debt or not. This is not correct. If Nalle consented that Harvey might sell the cotton to pay the rent, and plaintiff also consented to the sale for that purpose, Nalle's lien would be waived to the extent of the value of the cotton so sold, but plaintiffs' lien would not be affected for the full amount as to the residue of the crop to which it applied; the cotton so sold not being sufficient to pay the rent.

The assignment of error upon the foregoing requested charges contains the same vice as the charges themselves, and viewed in any aspect it is not well taken.

We believe the court correctly instructed the jury as to the method of arriving at the amount of plaintiffs' damages, in case the landlord's lien had been waived in part. Walhoefer Bros. could not take of the crops more in value for the rent assigned to them than $425, and if Nalle had waived a part of this amount, defendants would not be entitled to it. The effect of the transfer by Nalle to Walhoefer Bros. of the rental debt was to release all of it but $425. Besides this the very cotton sold to Walhoefer Bros. was levied upon for the rent and it was liable for it, unless the lien had been waived. In any event, the value of that cotton should be deducted from the rent debt acquired by Walhoefer Bros. When they acquired the claim, they released the whole eighteen bales from the levy of the distress warrant. They are not in a position to complain, certainly, as to the value of the twelve bales of cotton bought by them of Harvey, leaving out of view the other six bales upon which they released the levy.

Some of appellants' assignments of error are too general, but we believe none of them should be sustained.

We deem it unnecessary to prolong this opinion by a discussion of other points raised. We have examined and considered all of them, and find no reversible error assigned. We therefore affirm the judgment of the lower court.

*Affirmed.*